**RECORD NO. 24-1945**

---

**UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

---

GRAY MEDIA GROUP, INC.,

*Movant-Appellant*,

v.

HEATHER LOVERIDGE,

*Defendant-Appellee.*

---

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA**

---

**BRIEF OF MOVANT-APPELLANT**

---

Lauren P. Russell
Ballard Spahr LLP
1909 K St., NW, 12th Fl.
Washington, DC 20006

*Counsel for Movant-Appellant*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __24-1945__        Caption: __Gray Media Group, Inc. v. Heather Loveridge__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Gray Media Group, Inc., now known as Gray Local Media, Inc., d/b/a WBTV__
(name of party/amicus)

_____

 who is _____Appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?        ☑ YES ☐ NO
      If yes, identify all parent corporations, including all generations of parent corporations:

       Gray Television, Inc.

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?        ☐ YES ☑ NO
      If yes, identify all such owners:

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................. iii

INTRODUCTION ...........................................................................1

JURISDICTIONAL STATEMENT ................................................2

STATEMENT OF ISSUES .............................................................3

STATEMENT OF CASE .................................................................3

    A.    The Shooting Incident ......................................................3

    B.    Loveridge's Summary Judgment Motion and Belton's Opposition ...........................................................................5

    C.    The Parties' Motions to Seal ............................................7

    D.    The Court's Order and Loveridge's Appeal........................8

    E.    WBTV's Motion to Intervene ...........................................9

    F.    The Order on Appeal.......................................................10

SUMMARY OF ARGUMENT ......................................................12

ARGUMENT .................................................................................13

I.    THE FOURTH CIRCUIT HAS JURISDICTION TO ORDER THE VIDEO EXHIBITS UNSEALED NOW ...............................13

II.    THE DISTRICT COURT ERRED IN DENYING WBTV'S MOTION TO INTERVENE .........................................................15

    A.    District Courts Have an Ongoing Obligation to Monitor Access to Their Dockets.................................................16

    B.    District Courts Have Jurisdiction to Consider Collateral Motions During an Appeal.............................................18

III.    THE VIDEO EXHIBITS SHOULD BE UNSEALED ................22

i

A.   The District Court Did Not Follow Proper Procedure in
     Sealing the Video Exhibits ................................................................24

B.   The District Court Erred in Placing the Burden of Proof on
     WBTV on Its Motion ..........................................................................25

C.   The District Court Erred in Finding the Video Exhibits
     Should Be Sealed................................................................................26

CONCLUSION ......................................................................................................30

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Application & Affidavit for a Search Warrant*,
   923 F.2d 324 (4th Cir. 1991) ...................................................................23, 28

*Asemani v. U.S. Department of Homeland Security*,
   2024 U.S. Dist. LEXIS 23795 (D. Md. Feb. 12, 2024)....................................18

*In re Associated Press*,
   172 F. App'x 1 (4th Cir. 2006).............................................................15, 16, 30

*In re Charlotte Observer*,
   882 F.2d 850 (4th Cir. 1989) ..............................................................27, 28, 29

*In re Cigar Association of America*,
   812 F. App'x. 128 (4th Cir. 2020) ...................................................................16

*Company Doe v. Public Citizen*,
   749 F.3d 246 (4th Cir. 2013) ....................................................................*passim*

*CRST Expedited, Inc. v. Transam Trucking, Inc.*,
   2018 U.S. Dist. LEXIS 230695 (D. Iowa Oct. 9, 2018)...................................20

*Devlin v. Scardelletti*,
   536 U.S. 1 (2002)................................................................................................2

*FutureFuel Chemical Co. v. Lonza, Inc.*,
   756 F.3d 641 (8th Cir. 2014) ...........................................................................20

*Globe Newspapers Co. v. Superior Court*,
   457 U.S. 596 (1982)..........................................................................................15

*Langham-Hill Petroleum, Inc. v. Southern Fuels Co.*,
   813 F.2d 1327 (4th Cir. 1987) .........................................................................18

*Martin v. Shank*,
   1990 U.S. App. LEXIS 27376 (4th Cir. Feb. 12, 1990)...................................18

*MetLife, Inc. v. Financial Stability Oversight Council*,
   2016 U.S. Dist. LEXIS 68366 (D.D.C. May 25, 2016)....................................20

*In re NBC*,
　653 F.2d 609 (D.C. Cir. 1981)...................................................................28

*Nebraska Press Association v. Stuart*,
　427 U.S. 539 (1976)...............................................................................27

*Nixon v. Warner Communications*,
　435 U.S. 589 (1978)...............................................................................23

*United States ex rel. Oberg v. Nelnet, Inc.*,
　105 F.4th 161 (4th Cir. 2024) .........................................................*passim*

*In re Policy Management System Corp.*,
　No. 94-2254, 1995 U.S. App. LEXIS 25900 (4th Cir. Sept. 13, 1995) .............17

*Presley v. Georgia*,
　558 U.S. 209 (2010)...............................................................................27

*Press-Enterprise Co. v. Superior Court of California*,
　464 U.S. 501 (1984)...............................................................................27

*Rosenfeld v. Montgomery County Public Schools*,
　25 F. App'x 123 (4th Cir. 2001) ............................................................19, 24, 29

*Rushford v. New Yorker Magazine*,
　846 F.2d 249 (4th Cir. 1988) ..................................................................25

*Sanders v. Lowe's Home Centers*,
　2016 U.S. Dist. LEXIS 133056 (D.S.C. Sept. 27, 2016) ...................................18

*Simpson v. Technology Service Corp.*,
　2015 U.S. Dist. LEXIS 143502 (D. Md. Oct. 22, 2015) ...................................19

*Stone v. Univ. of Md. Med. Sys. Corp.*,
　855 F.2d 178 (4th Cir. 1988) ..................................................................16, 18

*United States v. Criden*,
　648 F.2d 814 (3d Cir. 1981) ...................................................................28

*United States v. Jackson*,
　2021 U.S. Dist. LEXIS 49841 (D.D.C. Mar. 17, 2021) ...................................30

iv

*United States v. Martoma,*
2013 U.S. Dist. LEXIS 182959 (S.D.N.Y. Dec. 28, 2013) ...............................28

*United States v. Thompson,*
1989 U.S. App. LEXIS 19909 (D.C. Cir. Oct. 13, 1989)...................................28

*Virginia Department of State Police v. Washington Post,*
386 F.3d 567 (4th Cir. 2004) ........................................................................22, 26

*In re Washington Post Co.,*
807 F.2d 383 (4th Cir. 1986) ........................................................................15, 24

*Washington Post v. Robinson,*
935 F.2d 282 (D.C. Cir. 1991) .............................................................................29

**Statutes**

28 U.S.C. § 1291 ...................................................................................................2

**Other Authorities**

Fed. R. Civ. P. 24(b) ........................................................................................9, 16

Local Rule 6.1(e).................................................................................................9

# INTRODUCTION

This appeal arises from a motion filed by Gray Local Media, Inc., d/b/a Charlotte television station WBTV,[1] seeking access to videos filed with the District Court for review with Defendant Officer Heather Loveridge's motion for summary judgment (the "Video Exhibits").

The parties and the presiding judge agree that the Video Exhibits, capturing a friendly fire incident during the execution of a search warrant in November 2019, are "critical" to this high-profile case, as they "visually depict the incident that is at the center of this litigation." JA401-02. They are also central to the public's understanding of law enforcement conduct that resulted in a state investigation and the underlying lawsuit. Nevertheless, pursuant to the District Court's Order, the Video Exhibits are sealed indefinitely.

The District Court below erred in denying WBTV's motion to intervene and for access to these judicial records on two separate grounds. First, the District Court erred in determining it lacked jurisdiction to grant WBTV's motion because of Loveridge's pending appeal of the District Court's summary judgment denial. This Court has been clear, including in its decision earlier this year in *United States ex rel. Oberg v. Nelnet, Inc*., 105 F.4th 161, 168 (4th Cir. 2024), that courts always

---

[1] Gray Media Group, Inc., changed its name to Gray Local Media, Inc. on July 1, 2024.

1

have jurisdiction to grant public access to judicial records, and a motion to intervene for the purpose of seeking access to judicial records is collateral to an appeal on the merits. Second, and most importantly, the District Court erred in finding the First Amendment and common law right of access to these video exhibits was overcome by Loveridge's interest in a fair trial, which well-settled case law establishes can be addressed through *voir dire*. The Court should reverse the District Court's Order and remand with instructions that the Video Exhibits be unsealed and produced to WBTV as promptly as possible.

## JURISDICTIONAL STATEMENT

The basis for the Court of Appeals' jurisdiction is 28 U.S.C. § 1291 (final decision of the District Court). On September 4, 2024, the District Court entered an Order denying WBTV's motion to intervene for the limited purpose of moving to unseal judicial records, the Video Exhibits, which was a final decision on WBTV's rights of access to the records. JA397. *See Co. Doe v. Pub. Citizen*, 749 F.3d 246, 262 (4th Cir. 2013); *see also Devlin v. Scardelletti*, 536 U.S. 1, 14 (2002) ("[T]he right to appeal from an action that finally disposes of one's rights has a statutory basis [in 28 U.S.C. § 1291]."). WBTV timely filed its notice of appeal of this Order on September 30, 2024. JA404.

As elaborated further below, the District Court has jurisdiction to decide this appeal on two bases. First, WBTV has nonparty appellate standing as it "(1)

possessed an interest in the cause litigated before the District Court and (2)

participated in the proceedings actively enough to make him privy to the record."

*Oberg*, 105 F.4th at 168 (internal marks omitted) (quoting *Co. Doe*, 749 F.3d at

259). Second, the Court has jurisdiction to treat this appeal as a petition for

mandamus. *See id.*

### STATEMENT OF ISSUES

1. Whether the District Court erred in denying WBTV's motion to intervene

   and unseal on the basis that it had no jurisdiction to decide the motion while

   an appeal is pending.

2. Whether the District Court erred in finding the First Amendment and

   common law right of access to the Video Exhibits submitted by the parties

   with Loveridge's motion for summary judgment was overcome by her

   interest in a fair trial.

### STATEMENT OF CASE

**A.    The Shooting Incident**

While executing a search warrant in 2019, Charlotte-Mecklenburg Police

Department Officer Heather Loveridge discharged her weapon, striking Clarence

Delano Belton, Jr., an FBI Task Force member ("TFO") with the Gastonia Police

Department. According to the parties' court filings, while executing a search

warrant on the home of Larry McConneyhead, Belton and another TFO broke open

3

the door to the home with a battering ram and shot at a person in the house. JA058; JA214-15. Loveridge, who had entered the home through another entrance, then shot Belton in the arm, and when he attempted to crawl away out of the garage, Loveridge shot at him another fourteen times, striking him several times in the arms. JA058; JA215.

Despite the great public interest in this botched search warrant execution, little information about the incident was initially released to the public. Immediately following the shooting, officials from multiple agencies reported that the North Carolina State Bureau of Investigation was launching an investigation to determine whose bullets struck an unidentified FBI TFO while executing an early morning search warrant. JA350.[2] One year later, Loveridge was cited for termination in connection to the shooting. JA350-51.[3]

Only in 2022, with the filing of the underlying lawsuit to this appeal, did the public learn that the shooting victim was Belton. *See* JA103. Belton's lawsuit

---

[2] WBTV Web Staff, *Shooting of FBI Task Force officer being investigated as possible friendly fire, sources say*, WBTV (Nov. 4, 2019), https://www.wbtv.com/2019/11/04/shooting-fbi-task-force-officer-being-investigated-possible-friendly-fire-sources-say/.

[3] WBTV Web Staff, *CMPD officer cited for termination nearly year after possible friendly fire injured FBI Task Force officer*, WBTV (Oct. 7, 2020), https://www.wbtv.com/2020/10/07/cmpd-officer-cited-termination-nearly-year-after-possible-friendly-fire-injured-fbi-task-force-officer/.

requested damages from Loveridge and the City of Charlotte for several claims related to the shooting, including negligence and use of excessive force in violation of the Fourth Amendment. *Id*.

**B.    Loveridge's Summary Judgment Motion and Belton's Opposition**

On May 2, 2023, Loveridge moved for summary judgment, arguing that when she saw Belton crawling through the garage, she had not previously met him, he was in plain clothes, and she believed he was McConneyhead. *See* JA064-65 ¶ 14.

In support of her motion, Loveridge submitted to the Court two exhibits she described as "a true and complete copy of a CPI security video that was provided by the NC State Bureau of Investigation to Defendant Loveridge following its investigation." *See* JA067-68 ¶¶ 19, 20, *see also* JA141, JA142. According to Loveridge, the home security video showed "the level of clutter in the garage" and that she would not be able to identify Belton. JA068 ¶ 20. The City of Charlotte also moved for summary judgment, adopting and incorporating Loveridge's statement of undisputed material facts and legal arguments. JA005 at ECF 24.

On March 16, 2023, Plaintiff filed his opposition to Loveridge's motion for summary judgment, and also attached another home security video as Exhibit 3. *See* JA210; JA250. Belton's Opposition contested what the security videos depicted:

Plaintiff was one of two TFOs who pursued McConneyhead into the garage, Plaintiff was standing on the garage side of the locked door when Defendant Loveridge approached and positioned herself within just a few feet of Plaintiff. (Ex. 3). Actual video footage, capturing the events as they occurred in the garage, shows the garage was well lit. (Ex. 3). The video shows Plaintiff wearing his police equipment; a bullet proof vest with the word "POLICE" emblazoned across the front of his vest, was clearly visible and from Defendant Loveridge's perspective, nothing impeded her from seeing the equipment and reading the word POLICE. (Ex. 3). The evidence shows that while Defendant Loveridge is positioned facing the garage, watching and listening to the TFOs, Defendant Loveridge can see Plaintiff talking with and directing his fellow task force officers. (Ex. 3). Those officers are likewise wearing police-issued equipment, including bullet-proof vests emblazoned with the word POLICE, as they are positioned on the garage-side of the locked door, obvious that they are police. (Ex. 1 at p. 132; Ex. 3). While Plaintiff was the only Black man on his team of otherwise Caucasian men, and the only Black man in the garage when Defendant Loveridge entered, he did not match the description of the subject of the search warrant beyond race and gender. (Ex. 1 at p. 135; Ex. 3).

JA223-24.

Belton further submitted as an exhibit another video captured on the body-worn camera footage of CMPD officer who was with Loveridge at the time of the shooting, which was "provided by the N.C. State Bureau of Investigations to Plaintiff's counsel following its investigation." JA214; *see also* JA264. Belton claimed this footage showed "Loveridge had the opportunity to see Plaintiff" before they broke into the house, and had the opportunity to see Belton was in law enforcement. JA223.

6

On reply, Loveridge countered Belton's representations about what

the home security videos depicted:

> To argue that Defendant Loveridge saw what the home security
> camera "saw" and recorded from its vantage point above the heads of
> everyone in the extremely cluttered garage and from a location in the
> garage that Defendant Loveridge was not occupying is completely
> illogical. What the video depicts is that Defendant Loveridge was in
> the garage for mere seconds, while in the garage, Defendant
> Loveridge was quickly glancing around and moving from one place to
> another, it shows that she was in between some very tall cabinets or
> shelves that totally obscured a field of vision between herself and
> Plaintiff, and it shows that two large officers were behind Plaintiff
> blocking a view of him. Finally, the home security video shows how
> quickly and recklessly Plaintiff decided to have the door rammed
> without any consideration for the dangers that could likely be
> encountered and without any consideration for the fact that GPD
> policy required that he not ram the door.

JA329-30.

## C.    The Parties' Motions to Seal

With their summary judgment briefs, Belton and Loveridge filed nearly

identical, perfunctory consent motions to seal any exhibits that were designated

"Confidential" during the exchange of discovery pursuant to the protective order

controlling discovery, JA037 ("Protective Order").  *See* JA046, JA204.  Without

making any specific arguments regarding the Video Exhibits, they both

conclusorily asserted that because the exhibits "were produced pursuant to the

Protective Order[,] . . . there is good cause to seal these documents consisting of

statutorily protected confidential video footage, State Bureau of Investigation file

7

materials, and personnel protected Internal Affairs interviews as the competing

interests for public access are outweighed by the strong public policy favoring

confidentiality of such records." JA046, JA204. Both Motions to Seal also

incorrectly asserted "[t]here is no common law or First Amendment presumption to

access confidential records such as those described above . . . and the interest in

keeping these records private outweighs any competing interest for access."

JA048, JA207.

Magistrate Judge David S. Cayer granted both motions to place the Video

Exhibits under seal the same day the motions were filed, and without making any

specific findings of fact. *See* JA005.

### D. The Court's Order and Loveridge's Appeal

On September 26, 2023, the Honorable Max O. Cogburn denied Loveridge

and the City's motion for summary judgment and ordered that the "matter shall

proceed to trial." *See* Sept. 26 Minute Order. Loveridge appealed this order on

October 4, 2023. *See* Oct. 4, 2023 Minute Order.[4] The City did not appeal, but

moved for a stay of all District Court proceedings pending resolution of

Loveridge's appeal, which Loveridge joined. JA339. The District Court granted

this motion. JA008.

---

[4] This appeal is pending and has been assigned case number 23-2046.

Nevertheless, the parties continued to ask the District Court for its input, including on whether Loveridge was required to order a transcript, and on proper redactions to the transcript. *See* JA008. The District Court ruled on these motions, despite the stay. *Id*.

### E.     WBTV's Motion to Intervene

On February 9, 2024, WBTV moved to intervene in the District Court matter Fed. R. Civ. P. 24(b) and Local Rule 6.1(e) for the limited purpose of moving to unseal the four Video Exhibits submitted by Loveridge and Belton on Loveridge's summary judgment motion. JA333. WBTV argued that the station and the public have a presumptive right of access to judicial records pursuant to the First Amendment and common law, and Loveridge and Belton's motions to seal did not even acknowledge these access rights, much less proffer any interests that could outweigh the public's interest in access to these judicial records. JA355-57. On February 14, 2024, the District Court entered a minute order stating Loveridge's response would be due on March 5. JA009.

Belton filed a response stating he agreed that "none of this material should be withheld from the public," and joined WBTV's Motion. *See* JA359-60. Loveridge, however, opposed WBTV's Motion on grounds that the Court lacks jurisdiction to decide a motion to intervene after a notice of appeal is filed, and

maintained that "publicizing the video exhibits would impair Defendant

Loveridge's ability to receive a fair trial before an impartial jury."  JA370.

WBTV's reply, filed on March 12, 2024, argued that the District Court had

jurisdiction to (1) monitor public access to its docket at all times, (2) consider

collateral motions to an appeal, like WBTV's Motion, and (3) rule on Belton's

adoption of the Motion.  JA384.  WBTV further argued that the District Court

could be addressed through *voir dire*, and the common law and First Amendment

rights to access were not overcome by Loveridge's argument.  JA388-89.

Five months later, on August 26, 2024, WBTV filed a notice of

supplemental authority to alert the District Court of this Court's decision in *United

States ex rel. Oberg v. Nelnet, Inc.*, 105 F.4th 161 (4th Cir. 2024), directing

unsealing of summary judgment exhibits on a third party's petition for mandamus.

JA393.  WBTV argued the decision "underscores that a trial court always has

jurisdiction to unseal judicial records, no matter the procedural posture," and

provided additional authority that summary judgment filings, just like the Video

Exhibits at issue here, should be released immediately.  JA394.

### F.    The Order on Appeal

On September 4, 2024, Judge Cogburn entered an Order denying WBTV's

motion.  First, the District Court held that "Defendant Loveridge's effective notice

of appeal has divested this Court of jurisdiction to entertain WBTV's intervention

motion." JA402. The District Court did not squarely address WBTV's arguments asserting why the District Court had jurisdiction to grant its motion to intervene, or specifically, the collateral issue doctrine permitting District Courts to issue orders collateral to the appeal. Indeed, the District Court's Order did not discuss this Court's ruling in *Oberg* at all, despite it having been supplied by WBTV.

Rather, the District Court's Order stated that the Video Exhibits "contain evidence critical to the Fourth Circuit's review and decision regarding Defendant Loveridge's appeal in that they visually depict the incident that is at the center of this litigation," and "these video exhibits bear directly on several issues identified by Defendant Loveridge in her Fourth Circuit appeal, such as whether Officer Loveridge's mistaken shooting violated the Fourth Amendment, and whether Officer Loveridge is entitled to qualified immunity." JA402. Addressing the merits of WBTV's argument, the District Court's Order found that "there is no common law or First Amendment right of access to the video exhibits." *Id.* The District Court found Loveridge's right to a fair trial "is a compelling interest" overcoming the right of access, and ignored WBTV's argument that this could be addressed through *voir dire*. JA403. Additionally, the court stated "pretrial publicity is not, in and of itself, a reason to allow access," and "WBTV has not shown why, at this late date, there would be such a monumental public interest in the video exhibits." *Id.*

## SUMMARY OF ARGUMENT

The press and public's right to access judicial records is of such importance that "[e]ach passing day may constitute a separate and cognizable infringement of the First Amendment." *Co. Doe*, 749 F.3d at 272-273 (cleaned up); *see also Oberg*, 105 F.4th at 172 (referring to *Company Doe*, "[t]his explains why we faulted the district court in *Doe* for temporarily sealing summary judgment documents and then waiting to make a final sealing decision until after it resolved the summary judgment motion nine months later"). In furtherance of the public's immediate right to access judicial records, courts have an ongoing obligation to ensure judicial records are accessible, and to make previously sealed records public if the circumstances justify.

This appeal presents two jurisdictional issues: this Court's jurisdiction to decide WBTV's appeal, and the District Court's jurisdiction to decide WBTV's motion to intervene and seal. First, this Court has repeatedly held, most recently in *Oberg*, that it will decide appeals such as this one because proposed intervenors seeking access to judicial records have nonparty appellate standing if they were sufficiently involved in the litigation below, or alternatively, the Court may treat a nonparty's appeal of a sealing order as a petition for mandamus. Second, the District Court abused its discretion in determining it lacked jurisdiction to grant WBTV intervenor status and grant its request for access. A court always has

12

jurisdiction to grant the public access to its docket, and WBTV's motion to intervene for the purpose of seeking access to exhibits filed with the parties' summary judgment briefing was collateral to Loveridge's appeal of the District Court's summary judgment order.

Most importantly, the District Court erred by sealing and then doubling down upon the sealing of the Video Exhibits. First, the District Court erred in sealing the Video Exhibits submitted with Loveridge and Belton's motions without making specific findings regarding the need for secrecy. Second, in considering WBTV's motion to unseal, the District Court erred in placing the burden on WBTV to demonstrate why the Video Exhibits should be made public, rather than placing the burden on Loveridge to demonstrate the need for secrecy to be maintained. Finally, the District Court erred in determining Loveridge's interest in a fair trial overcame the right to access the Video Exhibits without considering alternative means of protecting Loveridge's interest, including *voir dire*.

## ARGUMENT

### I.   THE FOURTH CIRCUIT HAS JURISDICTION TO ORDER THE VIDEO EXHIBITS UNSEALED NOW

This Court has multiple jurisdictional bases to reach the question of whether the Video Exhibits should be released.

A nonparty to a case has appellate standing if it has "some cognizable interest that is affected by the district court's judgment or order." *Co. Doe*, 749

F.3d at 259.  Specifically, a nonparty has standing where it "(1) possessed an interest in the cause litigated before the District Court and (2) participated in the proceedings actively enough to make him privy to the record." *Oberg*, 105 F.4th at 168 (quoting *Co. Doe*, 749 F.3d at 259) (internal quotation marks omitted). WBTV is not party to the case below because the District Court denied WBTV intervenor status, but it has a "cognizable interest" impacted by the District Court's Order.  As in *Company Doe*, WBTV has a First Amendment and common law interest in access to the Video Exhibits, which were sealed by the District Court in its March 2 & March 16, 2023 Minute Orders below, and WBTV is "privy to the record" pursuant to its motion to intervene and unseal – which Plaintiff Belton joined.  *See Co. Doe*, 749 F.3d at 259 (nonparty who was not granted intervenor status had standing to appeal sealing order where it objected to the motion to seal and filed its own motion to unseal).

Alternatively, the Court has jurisdiction to treat this appeal as a petition for mandamus.  "Appeal … is not the sole mechanism for challenging a District Court's sealing order," and a nonparty "can still seek mandamus review of the District Court's sealing decision." *Oberg*, 105 F.4th at 169; *see also id.* at 169 n.7 ("The right of nonparties to petition for writs of mandamus in cases involving the common-law or First Amendment right of access is well-established in our Circuit.") (citing cases).  WBTV has Article III standing and has substantially

complied with Rule 21(a) of the Federal Rules of Appellate Procedure; therefore, if necessary, the Court should conduct mandamus review of the Order denying WBTV's motion to unseal the records. *Id.* (treating an appeal of a sealing order as a petition for mandamus under these conditions); *see also In re Washington Post Co.*, 807 F.2d 383, 388 (4th Cir. 1986) (same).

Accordingly, this Court can and should ensure WBTV's request for access to judicial records is addressed without delay. *See Co. Doe*, 749 F.3d at 272-273.

## II.   THE DISTRICT COURT ERRED IN DENYING WBTV'S MOTION TO INTERVENE

Because the Court may treat WBTV's appeal as a petition for mandamus for unsealing of the Video Exhibits, the Court may order the Video Exhibits unsealed based on a *de novo* review of the record. But it is important to acknowledge that the District Court abused its discretion in denying WBTV intervenor status.

The Supreme Court has held that, under the First Amendment, "representatives of the press and general public must be given an opportunity to be heard on the question of their exclusion" from judicial proceedings. *Globe Newspapers Co. v. Super. Ct.*, 457 U.S. 596, 609 n.25 (1982) (cleaned up). As such, District Courts "must make on-the-record findings … and act on a sealing request" – or unsealing request – "as expeditiously as possible." *Co. Doe*, 749 F.3d at 272-73; *see also In re Associated Press*, 172 F. App'x 1, 6 (4th Cir. 2006)

(granting a third-party writ of mandamus when a district court denied the press's request for contemporaneous access to trial exhibits during an ongoing trial).

The press and public may seek to be heard on sealing matters in civil cases through Fed. R. Civ. P. 24(b), which permits non-parties to intervene if they "ha[ve] a claim or defense that shares with the main action a common question of law or fact."  Indeed, this Court regularly permits non-parties to intervene for the purpose of requesting access judicial records and proceedings.  *See, e.g.*, *Co. Doe*, 749 F.3d at 262 (considering decision on motion to intervene to access court docket and records); *In re Associated Press*, 172 F. App'x at 3 (considering decision on motion to intervene for the purpose of seeking contemporaneous release of trial exhibits).  Appellate courts review a denial of a motion to intervene for an abuse of discretion.  *In re Cigar Ass'n of Am.*, 812 F. App'x. 128, 134 (4th Cir. 2020).

## A.     District Courts Have an Ongoing Obligation to Monitor Access to Their Dockets.

This Court has repeatedly acknowledged "the right of access to judicial records and documents is independent of the disposition of the merits of the case," and, notably here, has ruled on unsealing requests no matter the status of the underlying case.  *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 178, 180 n.* (4th Cir. 1988) (determining affirmance of summary judgment did not moot news outlet's motion to intervene and unseal); *Oberg*, 105 F.4th at 173 (unsealing

summary judgment filings even though the case settled because "irrespective of whether a district court ever resolves a summary judgment motion, the public has a presumptive First Amendment right to access documents submitted in connection with it"); *see also In re Policy Mgmt. Sys. Corp.*, No. 94-2254, 1995 U.S. App. LEXIS 25900, at *5 n.3 (4th Cir. Sept. 13, 1995) (appeal of motion to intervene and unseal order decided even though underlying case had settled).

As this Court has stated, "[t]he public's interest in monitoring the work of the courts is subverted when a court delays making a determination on a sealing request while allowing litigation to proceed to judgment in secret." *Co. Doe*, 749 F.3d at 272. If courts do not have unfettered discretion to monitor public access to their filings, this would mean that, in instances such as this one, public access to court filings may be significantly delayed as the lawsuit moves through the court system, or denied forever once the case is closed. Parties like WBTV, which only became aware of the Video Exhibits after the District Court had ordered that they be sealed and after Loveridge had appealed the summary judgment decision, would be denied their First Amendment and common law rights of access simply because they were unaware that records of interest had been submitted to the courts while a motion to seal was pending, or because another court had jurisdiction over some aspect of the action.

17

"[T]he right to access protected documents attaches immediately upon their filing," and each day the Video Exhibits remain sealed is an additional infringement of the public's right to access them. *See Oberg*, 105 F.4th at 172. Given the First Amendment and common law rights at stake, courts should decide motions seeking access to judicial records no matter the status of the underlying litigation. *See, e.g., Stone*, 855 F.2d at 178; *Oberg*, 105 F.4th at 173.

**B.    District Courts Have Jurisdiction to Consider Collateral Motions During an Appeal.**

This Court has directed district courts that they retain jurisdiction in limited circumstances during the pendency of an appeal to decide collateral issues. *Langham-Hill Petroleum, Inc. v. S. Fuels Co*., 813 F.2d 1327, 1330-32 (4th Cir. 1987) (upholding ancillary attorneys' fee award requested after notice of appeal filed on grounds that it was collateral to the merits); *Martin v. Shank*, 1990 U.S. App. LEXIS 27376, at *3-4, n.* (4th Cir. Feb. 12, 1990) (noting a notice of appeal does not divest the District Court of authority to decide a Rule 11 motion); *Co. Doe*, 749 F.3d at 258 ("We have recognized limited exceptions to the general rule that permit District Courts to take subsequent action on matters that are collateral to the appeal."); *see also, e.g., Sanders v. Lowe's Home Ctrs.*, 2016 U.S. Dist. LEXIS 133056, at *1, n.1 (D.S.C. Sept. 27, 2016) (relying on this line of cases and addressing report and recommendation "because adjudication of the issue will not affect the appeal"); *Asemani v. U.S. Dep't of Homeland Sec.*, 2024 U.S. Dist.

18

LEXIS 23795, at *3 (D. Md. Feb. 12, 2024) (deciding motion to seal even though

court lacked jurisdiction to rule on motion to stay order on appeal); *Simpson v.*

*Tech. Serv. Corp.*, 2015 U.S. Dist. LEXIS 143502, at *4 (D. Md. Oct. 22, 2015)

(party motion to seal exhibits "is a collateral issue that does not implicate the

merits of the issues on appeal").

This Court has also explained that subject matter jurisdiction over the

underlying case is separate from a court's jurisdiction to decide public right of

access questions:

> The caselaw establishes that our jurisdiction to review a district court's sealing
> orders is based not on our jurisdiction over the subject matter of the underlying
> claims addressed by the district court, but on the public right of access, under
> the common law or the First Amendment, to judicial documents. It is this
> *public* right of access that gives third party press intervenors standing to
> intervene on appeal to seek review of sealing orders of the district courts.

*Rosenfeld v. Montgomery Cnty. Pub. Schs.*, 25 F. App'x 123, 131-132 (4th Cir.

2001).  WBTV's motion arose from a public right of access to judicial records – a

collateral right to Loveridge's appeal that would further public understanding of

the case – and the District Court did not need to wait for the Fourth Circuit to rule

on Loveridge's appeal before addressing WBTV (and Belton's) concerns about

public access to court records.

When courts in other jurisdictions have considered this issue, they have

determined that motions seeking enforcement of the First Amendment right of

access are among the limited circumstances in which a motion to intervene should

be decided while a case is on appeal. *E.g.*, *FutureFuel Chem. Co. v. Lonza, Inc*., 756 F.3d 641, 648 (8th Cir. 2014) (district court was permitted to consider whether to unseal the record despite plaintiff filing of a notice of appeal of summary judgment order); *CRST Expedited, Inc. v. Transam Trucking, Inc*., 2018 U.S. Dist. LEXIS 230695, at *7 (D. Iowa Oct. 9, 2018) (deciding "a motion to intervene for the limited purpose of accessing records is collateral to a merits appeal and that therefore the notice of appeal does not divest this court's jurisdiction to rule on the intervention motion"); *MetLife, Inc. v. Fin. Stability Oversight Council*, 2016 U.S. Dist. LEXIS 68366, at *7-8 & n.2 (D.D.C. May 25, 2016) (third party's motion to intervene for the limited purpose of unsealing records "was not mooted by this Court's disposition of the case on the merits or by [the defendant's] subsequent appeal"), *rev'd on other grounds*, 865 F.3d 661, 663, 664 n.1 (D.C. Cir. 2017) (reversing the district court's order denying the third party intervenor's motion to unseal).

Below, Loveridge relied on language in *Company Doe* in arguing the District Court lacked jurisdiction, but in doing so, disregarded that case's unique procedural posture. 749 F.3d at 246. In *Company Doe*, third parties filed a motion to intervene and unseal, and when the district court did not timely rule on the motion, the third parties appealed the "constructive denial" as well as the original sealing orders. *Id.* at 253. The district court then denied the motion to intervene

three months after the third parties appealed the constructive denial. *Id.* This

Court vacated the district court's belated order denying the motion to intervene,

where the *third parties'* notice of appeal stripped the district court of jurisdiction.

*Id.* at 259 ("[W]e hold that *Consumer Groups'* notice of appeal deprived the

District Court of authority to rule on *Consumer Groups'* motion to intervene."

(emphasis added)). The Court did not squarely address whether the district court's

order was collateral to the appeal – it quite obviously was not.

Here, by contrast, WBTV's motion to intervene and unseal is collateral to

Loveridge's appeal on her motion for summary judgment, and the District Court's

Order unsealing the Video Exhibits would have no bearing on this Court's decision

to affirm or reverse the District Court's summary judgment order. In fact, if the

District Court's rationale were to be accepted, it *also* lacked jurisdiction to *deny*

WBTV's motion to intervene, and the Court would need to vacate that order. *See*

*Co. Doe*, 749 F.3d at 259 (vacating district court order denying motion to intervene

when the intervenor had appealed constructive denial of the motion, thus depriving

the district court of jurisdiction). [5] As this Court's precedent makes clear, these

_____

[5] Although not material to this Court's review, the District Court self-evidently
did not view Loveridge's filing of a notice of appeal as divesting it of all
jurisdiction in the matter. First, it granted a stay in response to the City's motion –
which Loveridge apparently also believed was proper, as she joined the motion.
JA339; JA008. Then, Loveridge filed a motion to seal a hearing transcript that will
be part of the record on appeal after filing a notice of appeal, and the District Court
granted this motion. *See* JA337; JA342; JA008-09. Finally, the District Court set

jurisdictional squabbles are unnecessary and counterproductive to ensuring public access to judicial records is provided as quickly and seamlessly as possible.

For these reasons, the District Court abused its discretion in denying WBTV's motion to intervene – the proper procedural vehicle for exercising its public right of access – on jurisdictional grounds.

## III.    THE VIDEO EXHIBITS SHOULD BE UNSEALED

WBTV, on behalf of the public, has both a First Amendment and common law right of access to the Video Exhibits.  "It is well settled that the public and press have a qualified right of access to judicial documents and records filed in civil and criminal proceedings." *Co. Doe*, 749 F.3d at 265.  This right "derives from two independent sources: the common law and the First Amendment." *Va. Dep't of State Police v. Wash. Post*, 386 F.3d 567, 575 (4th Cir. 2004).  The right of access, "whether arising under the First Amendment or the common law, 'may be abrogated only in unusual circumstances.'" *Co. Doe,* 749 F.3d at 266 (quoting *Stone*, 855 F.2d at 182).  The common law creates a right of access to judicial records unless an opposing party rebuts with a showing that "countervailing interests heavily outweigh the public interests in access." *Oberg*, 105 F.4th at 171

---

a briefing schedule for WBTV's motion to intervene, and issued an order denying the motion.  These orders would likewise need to be vacated if the District Court lacked jurisdiction to take any action in this case.

(quoting *Rushford v. New Yorker Mag.*, 846 F.2d 249, 253 (4th Cir. 1988)). The First Amendment right of access presents a higher hurdle, and "access may be restricted only if closure is 'necessitated by a compelling government interest' and the denial of access is 'narrowly tailored to serve that interest.'" *Id.* (quoting *Co. Doe*, 749 F.3d at 266).

This Court has "squarely held that the First Amendment right of access attaches to materials filed in connection with a summary judgment motion." *Co. Doe*, 749 F.3d at 267 (citing *Rushford*, 846 F.2d at 252-53); *see also Oberg*, 105 F.4th 161 at 171 ("This is not the first time we have considered whether the First Amendment right of access applies to the summary judgment materials."). Thus, the presumption of access to judicial access may only be overcome if a party articulates "a compelling interest that outweighs the strong presumption of public access." *Co. Doe*, 749 F.3d at 272. This is particularly important in a case involving a friendly-fire incident while officers were executing a search warrant, given the Supreme Court's recognition of "the citizen's desire to keep a watchful eye on the workings of public agencies." *Nixon v. Warner Commc'ns*, 435 U.S. 589, 598 (1978); *see also In re Appl. & Aff. for a Search Warrant*, 923 F.2d 324, 331 (4th Cir. 1991) ("Society has an understandable interest . . . in law enforcement systems and how well they work.").

23

Because sealing orders implicate First Amendment rights, the Court reviews

these decisions *de novo*.  *Co. Doe*, 749 F.3d at 269.

### A.    The District Court Did Not Follow Proper Procedure in Sealing the Video Exhibits.

Before sealing a judicial record, a court must take three procedural steps.

First, it must give the public adequate notice that the closure of a hearing or the

sealing of documents may be ordered.  "In particular, closure motions must be

'docketed reasonably in advance of their disposition so as to give the public and

press an opportunity to intervene and present their objections to the court.'"  *In re*

*Washington Post Co*., 807 F.2d at 390.  "Second, the District Court must provide

interested persons 'an opportunity to object to the request before the court ma[kes]

its decision.'"  *Id*.  Third, if the court decides to seal records or a proceeding, "it

must state its reasons on the record, supported by specific findings," and these

findings "must be specific enough to enable the reviewing court to determine

whether closure was proper."  The court's specific findings must also include "its

reasons for rejecting alternatives to closure."  *Id*. at 391; *see also Rosenfeld*, 25 F.

App'x at 132 (providing the right of access "applies to documents submitted in

support of summary judgment motions in civil cases," and reversing and

remanding with instructions that the district court apply this test).  The District

Court followed none of these steps.

In March 2023, Magistrate Judge Cayer ordered the Video Exhibits sealed pursuant to the parties' sealing motions the *same day the motions were filed*, without providing any meaningful opportunity for the public to object, and without making any specific findings regarding whether the presumption of access had been overcome. *See* JA005. The motions themselves failed to acknowledge that First Amendment and common law rights of access attach to the Video Exhibits, much less proffer any interests that could outweigh the public interest in access to these judicial records. As justification, they pointed, in circular fashion, to the Protective Order's restrictions on disseminating these materials during discovery. Fourth Circuit law is clear, however, that "[o]nce the documents are made part of a dispositive motion, such as a summary judgment motion, they lose their status of being raw fruits of discovery." *Rushford*, 846 F.2d at 252 (cleaned up).

Regardless of the right to access material like this under the protective order, the parties made the Video Exhibits *judicial* records by submitting them to the Court as a basis for adjudication. As such, any party seeking to maintain sealing of the Video Exhibits now bears the burden of articulating a compelling reason to outweigh the public's presumptive right of access to these judicial records.

### B.    The District Court Erred in Placing the Burden of Proof on WBTV on Its Motion.

"The burden to overcome a First Amendment right of access rests on the party seeking to restrict access, and that party must present specific reasons in

25

support of its position." *Va. Dep't of State Police*, 386 F.3d at 575. When

considering WBTV's request for unsealing and Loveridge's objection, Judge

Cogburn erred in placing the burden on WBTV to demonstrate why the records

should be made public, stating "WBTV has not shown why, at this late date, there

would be such a monumental public interest in the video exhibits." JA403; *see*

*also* JA371 (Loveridge argues there is no "heightened public interest" in the Video

Exhibits because "the last media coverage referenced by WBTV of this incident

occurred in October 2020"). The real-time public interest in the records is in no

way a consideration when deciding whether an objecting party has articulated a

compelling interest to justify sealing. Loveridge, not WBTV, bears the burden of

demonstrating "unusual circumstances" exist that mandate sealing of the Video

Exhibits in abrogation of WBTV's right of access. *See Co. Doe,* 749 F.3d at 266.[6]

### C.     The District Court Erred in Finding the Video Exhibits Should Be Sealed.

Even if the District Court had properly placed the burden on Loveridge

when considering WBTV's Motion, Loveridge did not demonstrate that continued

sealing was "necessitated by a compelling government interest and narrowly

---

[6] While these procedural issues are grounds for reversal and remand, WBTV asks that the Court make its own findings in this appeal to ensure WBTV and the public's First Amendment and common law rights of access are vindicated as promptly as possible. *See Co. Doe*, 749 F.3d 246 at 272-273.

tailored to serve that interest." *Oberg,* 105 F.4th at 174 (cleaned up).  In opposing

WBTV's Motion, Loveridge stated "publicizing the video exhibits would impair

Defendant Loveridge's ability to receive a fair trial before an impartial jury."

JA370.  Notably, when the Supreme Court has acknowledged a defendant's right

to a fair trial may overcome the First Amendment right of access, it referred to the

Sixth Amendment right for *criminal* defendants.  *See Press-Enter. Co. v. Super. Ct.*

*of Cal.*, 464 U.S. 501, 510 (1984); *see also Co. Doe*, 749 F.3d at 249 (citing the

same).  But even when this competing constitutional right is asserted, "[t]he First

Amendment right of access cannot be overcome by the conclusory assertion that

publicity might deprive the defendant of the right to a fair trial." *Presley v.*

*Georgia*, 558 U.S. 209, 216 (2010) (cleaned up); *see also Neb. Press Ass'n v.*

*Stuart*, 427 U.S. 539, 565 (1976). ("[P]retrial publicity, even if pervasive and

concentrated, cannot be regarded as leading automatically and in every kind of

criminal case to an unfair trial.").  Court closure on this basis is unconstitutional

"[a]bsent consideration of alternatives to closure." *Press-Enter. Co.*, 464 U.S. at

510.

When balancing the public's right of access against the right to a fair trial,

"[*v*]*oir dire* is of course the preferred safeguard against this particular threat to fair

trial rights." *In re Charlotte Observer*, 882 F.2d 850, 855 (4th Cir. 1989).  While

"in particular cases the threat may be so overwhelming that only more drastic

measures are adequate," *voir dire* "can serve in almost all cases as a reliable protection against juror bias however induced." *Id.* at 856 (citing cases, and holding magistrate judge erred in sealing filings and proceedings related to a motion to change venue and denying media intervenors' challenge to the sealing orders); *In re Appl. & Aff. for a Search Warrant*, 923 F.2d at 330 (affirming district court order unsealing search warrant and affidavit and explaining "[i]t verges upon insult to depict all potential jurors as nothing more than malleable and mindless creations of pre-trial publicity."); *see also In re NBC*, 653 F.2d 609, 613-17 (D.C. Cir. 1981) ("voir dire has long been recognized as an effective method of rooting out such bias"); *United States v. Thompson*, 1989 U.S. App. LEXIS 19909, at *3 (D.C. Cir. Oct. 13, 1989) ("[A] searching and carefully conducted *voir dire* of potential jurors in future trials will fully protect the defendants' rights to a fair trial without unduly impairing the public's right of access."); *United States v. Criden*, 648 F.2d 814, 827 (3d Cir. 1981) ("the appropriate course to follow when the spectre of prejudicial publicity is raised is not automatically to deny access but to rely primarily on the curative device of voir dire examination"); *United States v. Martoma*, 2013 U.S. Dist. LEXIS 182959, at *24 (S.D.N.Y. Dec. 28, 2013) ("Numerous courts in high-profile cases have recognized that a thorough *voir dire* may be adequate to address concerns about the effect of pre-trial publicity on a defendant's right to a fair trial.") (collecting cases).

In finding that Loveridge's "right to a fair trial before an impartial jury requires the video exhibits to remain sealed," JA403, the District Court did not consider the alternative of *voir dire*, which WBTV asserted in its reply. JA388-89. Certainly, if *voir dire* obviates a criminal defendant's constitutional right to fair trial, it is an adequate alternative in this civil case. *See In re Charlotte Observer*, 882 F.2d at 856 (intervenors were entitled to access sealed records where magistrate judge "seriously undervalued the efficacy of jury *voir dire* as an alternative to the protections that closure might provide here"); *Rosenfeld*, 25 F. App'x at 132-33 (district court erred in failing to address "why they were sealed or why alternatives to leaving them sealed were rejected").

Additionally, the shooting and what the Video Exhibits depict have already been extensively described by Loveridge and Belton in their summary judgment briefs and the subject of reporting by the media. *See* JA351-53. Release of the Video Exhibits would only confirm what has already been made public, and Loveridge has not explained how release of the original Video Exhibits would cause any *additional* prejudice to her right to an impartial jury. *See Washington Post v. Robinson*, 935 F.2d 282, 292 (D.C. Cir. 1991) (rejecting claim that disclosure of plea agreement in highly publicized case could compromise an ongoing criminal investigation because disclosure "would only have confirmed to the public what was already validated by an official source" and disclosure "could

29

hardly have posed any additional threat to the ongoing criminal investigation"). As one court determined when considering a criminal defendant's objection to release of video exhibits depicting his conduct, which was described in detail in court filings, "[f]urther disclosures of his actual offense conduct as it occurred and captured on all five Video Exhibits may focus more attention on that conduct and possibly exacerbate that prejudice, but not to an extent that overcomes the presumption of public access." *United States v. Jackson*, 2021 U.S. Dist. LEXIS 49841, at *23 (D.D.C. Mar. 17, 2021).

Finally, Loveridge has made no efforts to tailor her request for continued sealing. The Fourth Circuit has stated access "may be limited by a compelling interest in preserving the fairness of the trial, provided the restriction on access is narrowly tailored." *In re Associated Press*, 172 F. App'x at 4. The ongoing wholesale sealing of the Video Exhibits for an undefined period of time violates the First Amendment and common law rights of access.

## CONCLUSION

WBTV respectfully requests that the Court reverse and remand with instructions that the District Court unseal the Video Exhibits, and grant such other relief as it deems just and proper.

Dated: November 25, 2024      Respectfully submitted,

BALLARD SPAHR LLP

By:   */s/ Lauren P. Russell*
     Lauren P. Russell

1909 K Street N.W., 12th Floor
Washington, DC 20006-1157
Tel: (202) 661-7605
Fax: (202) 661-2299
russelll@ballardspahr.com

*Attorney for Movant-Appellant*

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT</u>

1.    This brief complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

[X] this brief contains 7,243 words

2.    This brief complies with the typeface and type style requirements because:

[ X ] this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14 pt. Times New Roman.

Dated: November 25, 2024                    */s/ Lauren P. Russell*
                                            Lauren P. Russell